**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 2:26-cv-14103-DMM**

DIANNE SOLDEVILLA,
individually and on behalf of all others similarly situated,

Plaintiff,

v.

KIN INSURANCE, INC.,

Defendant.
_______________________________/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff Dianne Soldevilla brings this action against Defendant Kin Insurance, Inc., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by Plaintiff's attorneys and publicly available information concerning Defendant.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. Defendant is a direct-to-consumer home insurance company that telephonically solicits homeowners to purchase home insurance, including in Florida.

[1] Amended as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

3. This action is based on Defendant's direct initiation and physical placement of prerecorded telemarketing calls to consumers' cellular telephones, including Plaintiff's cellular telephone, to advertise Defendant's insurance products.

4. Through this action, Plaintiff seeks statutory damages under the TCPA and FTSA on behalf of Plaintiff and all others similarly situated individuals.

## PARTIES

5. Plaintiff Dianne Soldevilla is a natural person and resident and citizen of St. Lucie County, Florida.

6. Plaintiff is the regular user and called party of the cellular telephone number ending in 2753 that received the prerecorded telemarketing call alleged below.

7. Defendant Kin Insurance, Inc. is, and at all times relevant was, a Delaware corporation with its principal place of business in Chicago, Illinois.

8. Defendant offers, markets, and sells home insurance products and services to consumers, including Florida consumers.

## JURISDICTION AND VENUE

9. This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's FTSA claim pursuant to 28 U.S.C. § 1367 because the FTSA claim arises from the same telephone call campaign, the same conduct, and the same nucleus of operative facts as the TCPA claim.

10. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with Florida. Defendant registered to do business in Florida, markets and sells insurance products and services to Florida consumers, advertises Florida homeowners

insurance, and initiated and physically placed prerecorded telemarketing calls into Florida to Florida consumers, including Plaintiff.

11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in St. Lucie County, Florida, and received the call at issue on her cellular telephone while in Florida.

**FACTS**

12. Defendant engages in unsolicited telemarketing to sell homeowners insurance and related products.

13. Defendant's public website (www.kin.com) invites consumers to enter their property address to obtain a quote, offers consumers the option of speaking with a representative, and states that consumers can provide their contact information so quote details can be sent to them.

14. The sales pitch in the prerecorded call to Plaintiff matched Defendant's website marketing themes: the robocall referenced a Kin insurance quote and stated that Defendant had saved customers hundreds of dollars and could save Plaintiff money on her home insurance premium. Defendant's public website similarly advertises that customers report saving $989 on average when they switch to Defendant and invites consumers to obtain a quote to see what they can save.

15. Defendant has the practical and technical ability to initiate outbound prerecorded calls through its internal sales employees. Defendant's public job postings further indicate that Defendant maintains telephone-based sales operations involving company-provided leads. *See, e.g., jobs.ashbyhq.com/kin/10a306a9-77bc-41aa-8549-254bf1d5d476* ("Leverage company-provided qualified leads and execute consistent follow-up to move customers through the sales funnel to close").

16. Defendant directly selected Plaintiff's cellular telephone number for a home insurance quote related call, loaded or caused Plaintiff's number to be loaded into Defendant's own outbound calling system, selected or approved the prerecorded script used for the call, controlled the timing and content of the call, and physically initiated and placed the call to Plaintiff's cellular telephone.

17. Specifically, on or about November 5, 2025, at approximately 1:05 p.m., Defendant initiated and physically placed a prerecorded voice call from telephone number 772-356-1196 to Plaintiff's cellular telephone number ending in 2753.

18. The 772-356-1196 number is owned and/or utilized by Defendant to place outbound prerecorded sales calls.

19. Plaintiff's cellular telephone displayed the following voicemail record:




20. Plaintiff listened to the voicemail. The voice stated that it was "Carla calling from Kin Insurance regarding your quote."

21. In full, the voicemail stated: "Hi this is Carla calling from Kin insurance regarding your quote. We've saved many customers hundreds of dollars so let's see if we can save on your home insurance premium. It will only take a few minutes of your time, so please give me a call back at 855-717-0022. Thank you and have a great day."[2]

22. On its website, Defendant identifies the 855-717-0022 number as its contact number, and the number is answered by Defendant when called.

23. The call was a telemarketing call and advertisement because it encouraged Plaintiff to pursue Defendant's home insurance quote and promoted the commercial availability of Defendant's insurance products and services.

24. Plaintiff was able to determine that the message used an artificial or prerecorded voice, rather than a live person contemporaneously speaking to Plaintiff. The message had a uniform, scripted cadence; contained a generic sales pitch ("regarding your quote" when Plaintiff had not requested a quote); did not contain natural conversational pauses, interruptions, or individualized responses; and ended automatically after the prerecorded script completed.

25. Additionally, other consumers have complained of having received identical robocalls and/or robocalls in general from Defendant. *See, e.g.*, *www.directory.youmail.com/phone/804-587-7362*; *www.directory.youmail.com/phone/470-744-1873*;*www.bbb.org/us/il/chicago/profile/insurance-agency/kin-insurance-0654 90018428/complaints?page=3* ("I contacted KIN Insurance about robocalls to my cell phone and requested copy of their Do Not Call List Policy and the Third Party they used. They did not respond or provide policy[.]").

[2] Defendant's counsel has been provided the recording of the robocall received by Plaintiff.

26. Defendant has also been sued by at least two other consumers that received the same or similar robocall from Defendant. *See Taylor v. Kin Insurance, Inc.*, Case No. 1:25-cv-00213, [ECF No. 1], at 2 (N.D. Ill. 2025)("Hi, this is Carla calling from Kin Insurance regarding your quote. We've saved many customers hundreds of dollars. So, let's see if we can save on your home insurance premium…")[3]; *see also Fania v. Kin Insurance, Inc.*, Case No. 2:22-cv-12354, [ECF No. 1], at 5 (E.D. Mich. 2022)("Despite this, the Plaintiff received a pre-recorded telemarketing call from the Defendant on August 29, 2022.").

27. The message received by Plaintiff was recorded before the call was placed. It was not a voicemail contemporaneously dictated in real time by a live caller to Plaintiff.

28. The artificial or prerecorded voice was used for the purpose of advertising and soliciting the sale of Defendant's property, goods, and services, including home insurance products, quote services, and premium-savings opportunities.

29. The call was not made for emergency purposes.

30. Plaintiff never provided Defendant with prior express consent or prior express written consent authorizing Defendant to initiate or physically place telemarketing calls to Plaintiff's cellular telephone using an artificial or prerecorded voice or a recorded message.

31. As reflected by the above transcription of the call, Defendant's prerecorded call did not include an automated, interactive voice- or keypress-activated opt-out mechanism and did not

[3] The *Taylor* court denied Defendant's argument that the complaint did not sufficiently allege the use of a prerecorded call given that others have complained of receiving identical robocalls. *See id.* [ECF No. 19] at 3 ("Here, Plaintiff has plausibly alleged that Defendant used a prerecorded voice. First, Plaintiff alleged that the two voicemails she received were identical in tone, voice, content, and style. Second, she alleged others have complained about receiving the same call. Third, she alleged that the voicemails were generic (meaning, presumably, that they did not use Plaintiff's name or other identifying information) and had the exact same file size. Accepting these facts as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has plausibly alleged that the voicemails she received were prerecorded in violation of the TCPA").

provide Plaintiff with a meaningful opportunity to stop future prerecorded solicitations during the call.

32. Defendant maintains or has access to records concerning the call and the calling campaign, including outbound dialing records, transmission reports, call detail records, telephone-system logs, sales agent records, and recording files. These records will show the date and time of each call, the caller ID used, the target telephone number, the campaign or quote record associated with the call, the content of the prerecorded message, and whether Defendant possessed prior express written consent.

33. Defendant's prerecorded telemarketing calls harmed Plaintiff and members of the Classes by invading their privacy, intruding upon their seclusion, annoying and aggravating them, occupying their cellular telephone lines and voicemail inboxes, wasting their time, causing inconvenience, and violating their statutory privacy rights.

## CLASS ALLEGATIONS

## PROPOSED CLASSES

34. Plaintiff brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all other similarly situated persons. Plaintiff seeks to represent the following Classes:

> **TCPA Robocall Class**: All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received one or more non-emergency calls placed by Defendant to a cellular telephone number using an artificial or prerecorded voice regarding Defendant's insurance products and/or requesting a call back to Defendant.

> **TCPA No Opt-Out Mechanism Class**: All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received one or more non-emergency calls placed by Defendant to a cellular telephone number using an artificial or prerecorded voice regarding Defendant's insurance products and/or requesting a call back to Defendant, which did

not provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request.

**FTSA Class**: All persons in Florida who, within the four years prior to the filing of this lawsuit through the date of class certification, received one or more calls placed by Defendant using a recorded message when a connection was completed to the number called, regarding Defendant's insurance products and/or requesting a call back to Defendant.

35. Excluded from the Classes are Defendant, Defendant's officers and directors, Defendant's employees and legal representatives, any entity in which Defendant has a controlling interest, the Court and Court personnel, and the immediate family of any judge assigned to this action.

## NUMEROSITY

36. Upon information and belief, Defendant has initiated and physically placed prerecorded telemarketing calls to cellular telephone numbers belonging to at least fifty persons, and likely many more, as reflected by the various consumer complaints and prior lawsuits identified above, as well as Defendant's use of prerecorded robocalls to mass market to consumers. The members of the Classes are therefore so numerous that joinder is impracticable.

37. Identification of the Class members is capable of ministerial determination from Defendant's outbound call and internal records.

## COMMON QUESTIONS OF LAW AND FACT

38. There are numerous questions of law and fact common to the Classes that predominate over any questions affecting only individual members. Common questions include:

(a) Whether Defendant placed the prerecorded calls to Plaintiff and the Class members;

(b) Whether the calls used an artificial or prerecorded voice;

(c) Whether the calls were telemarketing calls or advertisements concerning Defendant's property, goods, or services;

(d) Whether Defendant can meet its burden of showing prior express consent;

(e) Whether Defendant violated the TCPA and the FTSA; and

(f) Whether Plaintiff and the Class members are entitled to statutory damages.

39. The common questions are capable of classwide answers because they turn on Defendant's standardized calling practices, scripts, telephone systems, call records, quote records, and consent records.

**TYPICALITY**

40. Plaintiff's claims are typical of the claims of the Class members because Plaintiff and the Class members received calls placed by Defendant using artificial or prerecorded voices or recorded messages to advertise Defendant's insurance products and services without the required prior express written consent.

**ADEQUACY**

41. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no interests antagonistic to the Classes, understands the nature of this action, and has retained counsel experienced in class litigation and telephone privacy cases.

**SUPERIORITY**

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the individual statutory damages available to each Class member are small compared with the burden and expense of individual litigation.

43. Separate actions by individual Class members would create a risk of inconsistent adjudications and incompatible standards of conduct for Defendant, whereas a class action will provide efficient, consistent, and final resolution of the common issues.

**COUNT I**
**Violation of 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the TCPA Robocall Class)**

44. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

45. The TCPA makes it unlawful to make any call, other than a call made for emergency purposes or with the prior express consent of the called party, using any artificial or prerecorded voice to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii).

46. Defendant initiated and physically placed non-emergency telephone calls to Plaintiff's and the TCPA Robocall Class members' cellular telephones using an artificial or prerecorded voice.

47. The calls advertised or promoted Defendant's property, goods, or services, including home insurance quotes and home insurance premium savings.

48. Defendant did not possess prior express consent or prior express written consent from Plaintiff or the TCPA Robocall Class members to initiate such calls using an artificial or prerecorded voice.

49. Defendant therefore violated 47 U.S.C. § 227(b)(1)(A)(iii).

50. As a result of Defendant's violations, Plaintiff and the TCPA Robocall Class members were harmed and are entitled to statutory damages of $500 per violation, treble damages if Defendant's violations are found to have been willful or knowing, and injunctive relief pursuant to 47 U.S.C. § 227(b)(3).

**COUNT II**
**Violations of 47 U.S.C. § 227 and 64.1200(b)**
**(On Behalf of Plaintiff and the TCPA No Opt-Out Mechanism Class)**

51. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 as if fully set forth herein

52. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(b)(3), provides in pertinent part:

> In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii), provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section.

53. Defendant violated 47 C.F.R. § 64.1200(b)(3) by delivering artificial or prerecorded voice messages in connection with telemarketing calls to Plaintiff's and the Class Members' telephone number that did not provide an automated, interactive voice and/or key press-activated opt-out mechanism for the called person to make a do not-call request.

54. Plaintiff and the Class Members were harmed by Defendant's refusal to provide an opt-out mechanism in that they were unable to stop Defendant's prerecorded solicitations.

55. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

**COUNT III**
**Violation of Fla. Stat. § 501.059**
**(On Behalf of Plaintiff and the FTSA Class)**

56. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

57. The FTSA prohibits a person from making or knowingly allowing a telephonic sales call to be made if the call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called, without the prior express written consent of the called party. Fla. Stat. § 501.059(8)(a).

58. A "telephonic sales call" includes a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of consumer goods or services or obtaining information that will or may be used for the direct solicitation of such a sale. Fla. Stat. § 501.059(1).

59. Defendant initiated and physically placed telephonic sales calls to Plaintiff and the FTSA Class members for the purpose of soliciting the sale of Defendant's consumer goods or services, including home insurance products and quote services.

60. Defendant's telephonic sales calls used the playing of a recorded message when a connection was completed to the numbers called, including when Defendant's prerecorded message was delivered to Plaintiff's cellular voicemail.

61. Defendant did not possess prior express written consent from Plaintiff or the FTSA Class members that satisfied Fla. Stat. § 501.059(1).

62. Defendant therefore violated Fla. Stat. § 501.059.

63. As a result of Defendant's violations, Plaintiff and the FTSA Class members were harmed and are entitled to statutory damages of $500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment in favor of Plaintiff and the Class Members and against Defendant as follows:

a) Certifying this case as a class action on behalf of the Classes defined above;

b) Appointing Plaintiff as representative of the Classes and Plaintiff's counsel as Class Counsel;

c) Declaring that Defendant's conduct violated the TCPA and the FTSA;

d) Awarding Plaintiff and the Classes statutory damages of $500 per violation under the TCPA and the FTSA, and treble damages for willful or knowing violations where authorized;

e) Awarding costs and any other relief available by law; and

f) Granting such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Classes, hereby demands a trial by jury on all issues so triable.

DATED: June 29, 2026

Respectfully submitted,

By: /s/ Manuel S. Hiraldo

**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
101 NE 3rd Avenue, Suite 1500
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
Counsel for Plaintiff